FILED
2013 May-15  PM 02:20
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **LINDA ROSENKRANZ,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **4:12-cv-2249-AKK** |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Linda Rosenkranz ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This Court finds that the Administrative Law Judge's ("ALJ") and the Appeals Council's decisions - which have become the decision of the Commissioner - are supported by substantial evidence.  Therefore, the court **DENIES** the motion to remand, doc. 11, and **AFFIRMS** the decision denying benefits.

## I. Procedural History

Plaintiff filed her application for Title II disability insurance benefits on July 25, 2008, alleging a disability onset date of December 31, 1995, due to epilepsy and fibromyalgia.  (R. 88, 265).  After the denial of her application on September 2, 2008, (R. 105), Plaintiff requested a hearing.  (R.96).  At the time of the hearings on December 17, 2009 and May 14, 2010, Plaintiff was 47 years old, had a GED, and past relevant light and semiskilled work as a seamstress.  (R. 43, 45, 57).  The ALJ denied Plaintiff's claim on June 28, 2010, which became the final decision of the Commissioner on April 23, 2012 when the Appeals Council refused to grant review.  (R. 1-6, 20).  In rejecting Plaintiff's request for review, the Appeals Council considered and added to the record exhibits 9E-12E and 17F, but declined to supplement the record with evidence that post-dated Plaintiff's date last insured.[1]  (R. 1-6).  Plaintiff then filed this action pursuant to section

---

[1]Exhibit 9E is Plaintiff's statement dated April 6, 2011; Exhibit 10E is counsel's brief dated March 21, 2011; Exhibit 11E is counsel's supplemental brief dated March 6, 2012; Exhibit 12E is counsel's second supplemental brief dated March 29, 2012; and Exhibit 17F is Plaintiff's Gadsden Regional Medical Center treatment records dated August 10, 1998.  (R. 291-350, 557).

The Appeals Council rejected the following evidence:  Pain and Wound Center treatment records dated September 9, 2008 through March 5, 2012; Southside Medical Clinic treatment records dated October 8, 2008; Dr. Daniel S. Prince's medical source statement dated December 9, 2009; Dr. David Wilson's psychological evaluation dated November 23, 2009; clinical assessment of pain dated August 20, 2010; awake and drowsiness EEG dated August 27, 2008; brain and posterior fossa MRI dated August 8, 2008; Riverview Medical Center treatment records dated July 11, 2008 through February 29, 2012; Dr. Pascual Herrara's medical source statement dated August 30, 2010; and Gadsden Regional Medical Center treatment records dated January 27, 2011.  (R. 2).

1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings

even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Plaintiff had not engaged in substantial gainful activity "during the period from her alleged onset date of December 31, 1995 through her date last insured of September 30, 1999" and therefore met Step One.  (R. 24).  Next, the ALJ determined that the medical records failed to "substantiate the existence of any medically determinable impairment."  (R. 25).  As the ALJ put it,

> The only available documentary evidence of record relative to any of the pertinent periods in question is in 1998, when the claimant gave birth to a child.  At that time, she was reported to be well developed and well nourished, with no significant medical history indicated.

She gave birth to a daughter via Cesarean section, and was discharged home in stable condition on the second postpartum day (Exhibit 4F). She did not seek any other medical treatment, per records, until September 2002 (Exhibit 9F), some three years beyond her date last insured for Title II eligibility.  She also testified that she first started having problems with fibromyalgia in 2004, which contradicts her Disability Report.

I find that the claimant's allegations and testimony of disabling pain and functional restrictions lack substantiation and credibility.  I find that the record does not contain objective signs and findings that in any way support her allegations.  There are no diagnostic studies to show abnormalities.  The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged.  Dr. Gerald Winkler, a Harvard neurologist testified telephonically at the hearing that the claimant's allegations of seizures, pain and fibromyalgia were simply not medically supported.  I adopt this testimony and so find.

* * * *

Regarding the claimant's testimony that she could only sit for five minutes consistently, she sat at the hearing for a far long[er] period. Her explanation: "a soft chair."  There is a serious issue regarding the claimant's credibility.  Even the blood tests fail to reflect that the claimant was taking anti-seizure medication for alleged seizures.

Accordingly, I find that there are no medical signs or laboratory findings to substantiate the existence of any medically determinable impairment through the date last insured of September 1999.  Thus, the claimant has not been disabled within the meaning of [the Act] at any time from December 31, 1995, the alleged onset date, through September 30, 1999, the date last insured.

*Id*.  Therefore, because the ALJ answered Step Two in the negative, the ALJ determined that Plaintiff is not disabled.  (R. 25-26); *see also McDaniel*, 800 F.2d

at 1030.  It is this finding that Plaintiff challenges.

## V.  Analysis

Plaintiff attacks the ALJ two fold – first, she contends that the ALJ erred because he limited the testimony of a witness, and failed to develop the record, consider all of Plaintiff's severe impairments, or state reasons for discrediting Plaintiff.  Doc. 10.  Second, Plaintiff contends that a remand is warranted under sentences four and six of 42 U.S.C. § 405(g) because of the ALJ's and Appeals Council's purported failure to consider relevant evidence.[2]  Docs. 11; 10 at 31. The court will address the remand contention first and then the specific contentions about the purported errors the ALJ and Appeals Council made.

*A.     Remand*

Plaintiff filed a motion to remand based on sentence four because "records were submitted to the ALJ and the Appeals Council and they have been omitted from the Record" and sentence six because "new records are being submitted to

---

[2]Sentence four states that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of the Social Security, with or without remanding the cause for a rehearing."

Sentence six states, in relevant part, that "[t]he court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner, but only upon showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).

the Court."[3]  Doc. 11 at 1-4.  For the reasons stated below, the motion to remand is **DENIED**.

    1.   <u>Sentence four remand</u>

    "[A] decision of the Appeals Council to deny review after refusing to consider new evidence is a part of the 'final decision' of the Commissioner subject to judicial review under sentence four of section 405(g)." *Ingram v. Comm'r of the Soc. Sec. Admin.*, 496 F.3d 1253, 1265 (11th Cir. 2007).  "When a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has adequately evaluated the new evidence.  If the Appeals Council merely 'perfunctorily adhere[s]' to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence and [the court] must remand 'for a determination of [the claimant's] disability eligibility reached on the total record.'" *Flowers v. Comm'r*, 441 F. App'x 735, 747 (11th Cir. 2011), citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980).  Basically, "[t]he fourth sentence of section 405(g) provides the federal court 'power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner.'" *Ingram*,

---

[3]Plaintiff contends also that remand is warranted because the ALJ refused to allow the full testimony of Plaintiff's witness at the hearing, doc. 11 at 4, which is discussed in section C., *infra*.

496 F.3d at 1261.

### a.    Evidence submitted to the ALJ

Plaintiff challenges the ALJ's alleged omission of the following exhibits from the record:  May 20, 2010 brief and insurance statements and diagnosis codes from 1992 through 2000 (Exhibit A); December 1, 2009 brief and treatment notes from Gadsden Psychological Services (November 23, 2009) and the Pain and Wound Care Center (September 18, 2008 through October 15, 2009) (Exhibit B); December 11, 2009 brief and December 9 and 10, 2009 treatment records from Dr. Daniel Prince and Dr. Odeane Connor, respectively (Exhibit C); and May 20, 2010 brief and February 3, 2010 letter from Dr. Jack Bentley, Jr. (Exhibit D).  Docs. 11 at 1; 11-1 through 11-4; 10-1; (R. 163-232).  However, contrary to Plaintiff's contentions, Exhibit A is a part of the record at exhibits 14B-16B (R. 163-231), and, as Plaintiff correctly points out, Exhibit D is also a part of the record at exhibits 12B and 16F (R. 161, 556); doc. 11 at 2.  Therefore, Plaintiff is incorrect when she claims that the ALJ omitted these two exhibits.  Moreover, a review of the remaining exhibits shows clearly that they fail to help Plaintiff meet her burden of establishing her disability by her September 30, 1999 date last insured.  Specifically, Exhibits B and C are from 2008 and 2009, i.e. almost ten years past Plaintiff's date last insured.  As such, they are too remote to establish Plaintiff's

disability on or before her date last insured of September 1999.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (unlike SSI benefits, "a claimant is eligible for [disability insurance benefits] where she demonstrates disability *on or before* the last date for which she were insured.") (emphasis added); 42 U.S.C. § 423(a)(1)(A).  Therefore, based on this record, the ALJ's decision to omit Exhibits B and C from the record is supported by substantial evidence.

### b.  Evidence submitted to the Appeals Council

After the ALJ denied Plaintiff's claim, Plaintiff sought review from the Appeals Council and submitted new evidence, which the Appeals Council evaluated:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence [Exhibits 9E-12E and 17F] listed on the enclosed Order of the Appeals Council.
>
> We found that this information does not provide a basis for changing the Administration Law Judge's decision.
>
> We also looked at treatment records from the Pain and Wound Center, dated September 9, 2008 through March 5, 2012 [Exhibit J]; treatment records from Southside Medical Clinic, dated October 8, 2008; medical source statement by Daniel S. Prince, MD, dated December 9, 2009; psychological evaluation report from David R. Wilson, PhD, dated November 23, 2009; clinical assessment of pain, dated August 20, 2010 [Exhibit F]; awake and drowsiness EEG, dated August 27, 2008; MRI of the brain and posterior fossa, dated August 8, 2008; treatment records from Riverview Medical Center, dated July 11, 2008 through [ ] February 29, 2012 [Exhibit G]; medical source

statement by Pascual Herrara, MD, dated August 30, 2010 [Exhibit E]; and treatment records from Gadsden Regional Medical Center, dated January 27, 2011 [Exhibit H].

The [ALJ] decided your case through September 30, 1999, the date you were last insured for disability benefits.  This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

(R. 2).  Plaintiff contends the Appeals Council erred when it rejected Exhibits E-J that "have been omitted from the record."  Docs. 11 at 2; 11-5 through 11-10. Plaintiff's contention is unavailing, however, since medical records dated after September 30, 1999 simply do not help Plaintiff establish her disability status. Therefore, the Appeals Council correctly evaluated and rejected the evidence dated from August 2008 through March 2012 that Plaintiff submitted.  This "new" evidence was well outside the relevant time period and provided no basis for the Appeals Council to overturn the ALJ's decision.[4]  Accordingly, the Appeals Council's decision to reject the evidence is supported by substantial evidence.

Based on a review of the evidence, Plaintiff has failed to establish that a remand under sentence four is warranted.  Accordingly, the motion to remand

---

[4]Presumably, the Appeals Council did not receive Exhibit I because it is not listed among the evidence it evaluated.  Nevertheless, Exhibit I also fails to establish Plaintiff's disability because the information from Southside Medical Clinic, dated February 3, 2011, is outside the relevant time period.  Doc. 11-9.

under sentence four is **DENIED**.

>    2.    <u>Sentence six remand</u>

Plaintiff contends also that a remand under sentence six is warranted because "new records [Exhibit K] are being submitted to the court" which "were not submitted to the Appeals Council due to [an] oversight."  Docs. 11 at 1-2; 11-11.  Sentence six of 42 U.S.C. § 405(g) provides the "sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court."  *Ingram*, 496 F.3d at 1267.  To trigger relief, a Plaintiff must demonstrate that the evidence (1) is new and noncumulative, (2) is "material" such that there is a reasonable probability that it would change the administrative result, and (3) was not submitted at the administrative level for good cause.  *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986); *see also Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985).  Unfortunately for Plaintiff, she failed to show any good cause for her failure to submit Exhibit K at the administrative level.  Instead, Plaintiff maintains only that the documents "were not submitted to the Appeals Council due to [an] oversight."  Docs. 11 at 2; *see also* 14 at 1.  However, the good cause "requirement reflects a congressional determination to prevent bad faith manipulation of the administrative process," it "prevents claimants from attempting to withhold evidence" to "obtain another bite

of the apple," and may be established only if the evidence did not exist at the time of the administrative proceeding. *Milano*, 809 F.2d at 767 (citation omitted). Put differently, an "oversight" is not an appropriate basis to claim good cause.

Alternatively, the new evidence, which consists of health insurance statements, health care service dates, and provider and diagnosis codes, is not material and fails to substantiate Plaintiff's disability claim. Doc. 11-11 at 1-10. Presumably, Plaintiff contends that the court should accept the insurance diagnosis codes as objective medical evidence of her disability, i.e. "medical signs and laboratory findings." 20 C.F.R. § 404.1529(a). However, the mere existence of a severe impairment is insufficient to support a disability claim since the Act "defines 'disability' in terms of the effect a physical [ ] impairment has on a person's ability to function in the workplace." *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Moreover, even if the court considered the evidence, it fails to establish Plaintiff's disability status because between the December 1995 onset date and September 1999 date last insured, diagnosis code 7245 appeared only in August and September 1999. These two entries in two consecutive months fall short of rising to an impairment "which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 404.1527(a)(1); doc. 11-11 at 2. Accordingly, a sentence six remand is also not

warranted here.  Therefore, the motion to remand under sentence six is **DENIED**.

B.      *The ALJ's alleged failure to develop the record*

        In addition to claiming that a remand is warranted, Plaintiff also contends

that the ALJ committed several errors that warrant a reversal by this court.  First,

Plaintiff asserts that the ALJ "omitted [Exhibits A-C attached to the motion to

remand] from the Records and were not considered in the evaluation of claimant's

appeal" and "rejected records which were submitted to the ALJ."  Doc. 10 at 13,

15; *see also* docs. 11 at 1; 11-1 through 11-3.  This argument is unpersuasive.  A

disability insurance benefits claimant must show the onset of disability before the

expiration of the claimant's insured status.  *Ware v. Schweiker,* 651 F.2d 408, 411

(5th Cir.1981), *cert. denied,* 444 U.S. 952 (1979); *Milam v. Bowen,* 782 F.2d

1284, 1286 (11th Cir.1986); *see* 42 U.S.C. §§ 416(i)(3) and 423(c)(1).  As

explained fully in section A., *supra,* Exhibits A-C are irrelevant to Plaintiff's

disability claim because they are either dated at least nine years after Plaintiff's

date last insured or they fail to establish a severe impairment for the requisite

twelve months.  As such, the ALJ committed no error in failing to develop the

record based on medical records generated some nine years after Plaintiff's date

last insured.

*C.*     *The ALJ's failure to allow testimony*

Next, Plaintiff raises multiple contentions of error regarding restrictions the ALJ purportedly placed on testimony at the two hearings.  The court discusses the contentions below.

      1.     <u>Alleged restriction on testimony of Plaintiff's friend at the first</u> <u>hearing</u>

First, Plaintiff contends that the ALJ failed to allow her lawyer "to ask all of her questions of . . . her witness at the first hearing" even though "Counsel explained that the testimony would show that Claimant was in the same condition in 1999 as she [is] in now."  Doc. 10 at 16.  This argument is unavailing because Counsel conceded during the first hearing that he needed to further substantiate the record and agreed to a second hearing to allow Plaintiff's witness an opportunity to testify:

> Atty:  The earliest records, Your Honor, is the chiropractic record in November 1999.  And then after that the records sort of picks up in 2004 in [the] Pain & Wound Care Center in May, May 3rd of '04.
>
>                        * * * *
>
> ALJ:  Well, I can't send her for physical exams because no doctor's going to find that, well, you know, I think 15 years ago she was whatever.  They give a current evaluation.  That carries us nowhere.  And if I get a doctor to testify he may say someone who has a condition in '07 like this could have had it.  I mean I'm really grasping at straws here.  You have a very difficult job ahead of you.  But I will take as your offer of proof that

what her friend would testify, and maybe you would ask her to come to the next hearing, that she would say going back 15 years ago to '95 that she was having significant seizures.  I, I could take that as an offer of proof subject to her coming back to a secondary hearing.  That's how I see it.  But I do think that I just can't flip a coin and say, well, I guess you had it 15 years.  I mean I, the currency I deal in is evidence and I have to have some evidence in addition to a friend saying, you know, what she, she had seizures.  But I think someone who reviews medical records could say, well, if a person had this condition in '98 that they would have it in '99 or if a person had it in 2007.  I can see where they can interpret retroactivity.  I certainly can't by reading a medical record five, six years later say, oh, this person must have had it because I deal in evidence.  That's what a lawyer does.  So why don't I get a neurologist to testify to say this is possible based on all the evidence we have and someone would testify that she had seizures before.  What do you think?  It would at least bring us a little closer to the truth, I don't know how. . . .  I just want to find out if one can reasonably say going back to '95 that she never could have worked not withstanding the epilepsy.  Because I have heard people, I have ruled that people with epilepsy, depending on how controlled it is on the medications, can work at some job.  Epilepsy does not mean a person's, per se, disabled.  It means it's severe but not necessarily disabling in terms of never being able to work.  What do you think about that, does that make any sense to you?

Atty:  I think that's a good plan, Your Honor.

\* \* \* \*

ALJ:  Okay, perfect.  All right.  Let's do that, we'll hold another hearing.  You'll bring your friend.  Give her time to get additional documents for the earlier part.  And I'll have a neurologist testify if they could infer from (inaudible) how far back we can go.  The best I could do, okay?

Atty:  Yes, thank you.

* * * *

ALJ:  All right.  Do you have any questions?

Atty:  No, sir.

(R. 40-41, 45).  Based on this testimony, Plaintiff's assertion regarding the first hearing is unfounded.  The evidence is uncontroverted that Counsel agreed to postpone the witness testimony until the second hearing to allow Plaintiff time to gather additional evidence and to allow a neurologist to testify.

 2. <u>Alleged restriction on Plaintiff's testimony at the second hearing</u>

 Second, Plaintiff contends that the ALJ erred when he failed to allow Plaintiff's counsel "to ask all of [his] questions" regarding how Plaintiff spent her day.  Doc. 10 at 16.  Contrary to Plaintiff's contention, while the ALJ precluded Counsel from asking leading questions, he allowed Plaintiff to testify about her activities of daily living:

 Atty:  Okay.  Now back during the time between '95 to '99 were you lying down during the day for any reason?

 Plaintiff: Yes, I was.

 Atty:  Why?

 ALJ:  See that's what I call a leading question.

 Atty:  Okay.

 ALJ:  In other words, ask her what she was doing as opposed to

testifying?

Atty:  Okay.

ALJ:  What were you doing?  How did you spend your day?  That's what I want to - - because there's an issue of credibility here. I've already had a doctor to testify there's nothing severely wrong with her.  So now we're to her testimony, and this is the second hearing on it.  We need her testimony.  See what I'm saying.

Atty:  Yes, sir. . . .  The judge has asked how did you - - basically, he would like to know, I think, how did you spend your day between the years of 1995 and 1999?

(R. 71-72).  The record shows that after the ALJ prohibited counsel from asking leading questions, Plaintiff testified extensively about her activities during the 1995-1999 period, including that she raised an infant, soaked in hot water to relieve pain which she scored as a 9 on a 10 point scale, watched television, did a "little housework," and transported her daughter to and from school.  (R. 72-74). In other words, the evidence belies Plaintiff's contention that the ALJ precluded her from testifying regarding the effects of her purported impairment.

　　　3.　　　Alleged restriction on a witness's testimony at the second hearing

Third, Plaintiff contends that the ALJ "refused to allow the witness to testify regarding the Claimant's seizure disorder and panic attacks."  Doc. 10 at 16.  The relevant exchange is as follows:

Atty:  Did you ever see any seizure like activity [between 1995 and 1999]?

Witness:     A mini seizure.

&ast; &ast; &ast; &ast;

ALJ:  I'm not going to allow any testimony of hers that she saw seizures, because she's -- I need a doctor to testify.

Atty:  Okay.

ALJ:  She's not [ ] a doctor.  I don't know what she calls a seizure whether it is a seizure or not.

Atty:  Okay.

ALJ:  All of her medical tests show that there were no seizures.  I'm not accepting her testimony that she could diagnose seizures.

Atty:  Okay.

Witness:     I'm not claiming to.

Atty:  She [ ] is a paramedic, Your Honor.

ALJ:  She could be a paramedic, but I'm not accepting her testimony that she [ ] could diagnose eight or nine seizures in light of the record.

Atty:  Okay.

ALJ:  If she were a doctor, yes, but she's not.

Atty:  Okay.  Can she testify about whether she ever witnessed a panic attack?

ALJ:  Well, there's no allegations of panic attacks. . . .  Where's that come up.

Atty: She was treated for anxiety and the - -

ALJ:  In the papers that she filed, she never mentioned anything about panic attacks.

Atty:  She testified today that she experienced panic attacks back during the relevant time period.

ALJ:  Yeah, but I mean it's – I mean, no, because it's – I mean it should be an allegation, it can't come out of the blue, you know.  As I said, the alleged onset date is 15 years ago, she filed the papers in 2008, she made no allegations about panic attacks, and I don't think its relevant.  Her allegations then were epilepsy, and we've heard testimony on that.  Her allegations was fibromyalgia.  Those are the two areas.  But nothing about panic attacks that I see.  And that would be if you look under case data under allegations, nothing about panic attacks.

Atty:  You know I, I mean she testified about it today, and I, I don't think it's a requirement that you list ever single impairment when you file a claim, but I will –

ALJ:  I think it is.

* * * *

Atty:  Do you remember if [Plaintiff] had any difficulty concentrating or thinking 15 years ago?

Witness:      Pretty much, yeah, she's had a lot of difficulties over the years.

Atty:  Okay.  Can you give me an example of something that you saw that indicated a problem in that area?

Witness:      Well, a lot of times I'd go over there, and we'd be trying to cook, and she would just get upset, and couldn't do anything.  I mean her back would start [having]

> spasm[s], she would have to sit down, you know, and
> couldn't really remember what was going on.  I don't
> know if that was related to a panic disorder, or what, but
> I mean she had a lot of difficulties.  And she just -- the
> pain would cause her to get anxious, I mean she just, she
> couldn't concentrate.

Atty:  Okay.  Those are all the questions I have of the witness, Your
      Honor.

(R. 79-81, 83-84).

Presumably, Plaintiff is contending that her friend's testimony would have established that Plaintiff suffered epileptic seizures and panic attacks prior to her date last insured.  However, an ALJ's refusal to allow lay person's testimony about a medical condition is irrelevant in the absence of sufficient medical evidence to support the disability claim.  *See Landry v. Heckler*, 782 F.2d 1551, 1554 (11th Cir. 1986) ("Because [the plaintiff's] claim fails for want of sufficient medical evidence, his assertion that he should have been allowed to produce lay testimony is mooted.").  As stated earlier, nothing in the record shows an *actual* diagnosis of epilepsy, fibromyalgia, panic attacks, or anxiety before Plaintiff's date last insured.  Indeed, consulting neurologist Dr. Gerald Winkler testified that "Plaintiff might have a seizure disorder, but it hasn't been proven. . . .  Now another diagnosis that has been carried along in these notes just as a statement without supporting data is that of fibromyalgia, but there's no data, no indication

of (inaudible) attacks the activities of daily living, et cetera, so I can't use that to determine any meeting or equaling of a listing."  (R. 55).  Therefore, to the extent that Plaintiff is claiming she is disabled based on an undiagnosed condition or a condition that was diagnosed before her date last insured – and one which her lay witness would have verified, her claim fails because she failed to prove that she actually suffered from a severe impairment during the relevant period of time.

In short, based on a review of the record, the court finds no error in the ALJ's decision to preclude a lay witness from testifying about Plaintiff's purported medical conditions, or Counsel from asking Plaintiff leading questions. Therefore, the ALJ's decision is supported by substantial evidence.

D.    *The ALJ's alleged failure to consider all of Plaintiff's severe impairments*

Plaintiff's next contention is that the ALJ failed to consider Plaintiff's thoracic pain, lumbalgia,[5] and dysmenorrhea[6] in assessing her claim.  Doc. 10 at 17-18.  This contention also misses the mark because the medical records prior to her date last insured, which consists of two medical reports, do not support Plaintiff's disability claim.  The first report is Plaintiff's ante- and postpartum

---

[5]Lumbago is defined as "a nonmedical term for any pain in the lower back."  Elsevier Saunders, Dorland's Illustrated Medical Dictionary, 1076 (2013).

[6]Dysmenorrhea is defined as "painful menstruation."  Elsevier Saunders, Dorland's Illustrated Medical Dictionary, 578 (2013).

medical records from Gadsden Regional Medical Center in September 1999, which fail to mention *any* purported severe impairments.  (R. 557-588).  The other medical record is Dr. L. Steven Knighten's initial evaluation on November 19, 1999 where he noted that Plaintiff was negative for postural maneuvers and straight leg raises, had upper extremity reflexes at 2/2, normal lower extremity reflexes, lower and upper extremity muscle strength at 5/5, tenderness and spasms upon palpation of the thoraco-lumbar area, and painful thoraco-lumbar ranges of motion.  (R. 511).  Dr. Knighten diagnosed Plaintiff with thoracic pain and lumbalgia and prescribed chiropractic manipulation and ice to the tender areas.  *Id*. Finally, Plaintiff's November 1996 insurance statement listed a dysmenorrhea diagnosis.  Doc. 10 at 18.  Unfortunately for Plaintiff, this scarce record fails to substantiate that she suffered from any of the alleged symptoms or disabling impairments for "a continuous period of not less than 12 months."  20 C.F.R. § 404.1527(a)(1).  Therefore, the ALJ's decision to not consider these conditions is supported by substantial evidence.

E.    *ALJ's alleged failure to state adequate reasons for discrediting Plaintiff*

Finally, Plaintiff challenges the ALJ's finding that her testimony that her "back [has] hurt[ ] constantly" since 1987 was not credible.  According to Plaintiff, the ALJ erred because the pain standard does not require objective proof

of pain.  Doc. 10 at 19; (R. 58).  This circuit applies "a three part 'pain standard'

when a claimant seeks to establish disability through his or her own testimony of

pain or other subjective symptoms."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th

Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms the
> severity of the alleged pain arising from that condition or (3) that the
> objectively determined medical condition is of such a severity that it
> can be reasonably expected to give rise to the alleged pain.[7]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective
> medical evidence of a condition that could reasonably be expected to
> cause the pain alleged, neither requires objective proof of the pain
> itself.  Thus under both the regulations and the first (objectively
> identifiable condition) and third (reasonably expected to cause pain
> alleged) parts of the *Hand* standard a claimant who can show that his
> condition could reasonably be expected to give rise to the pain he
> alleges has established a claim of disability and is not required to
> produce additional, objective proof of the pain itself.  *See* 20 CFR §§
> 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th
> Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is itself

---

[7] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761
F.2d 1545, 1548 (11th Cir. 1985).

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

Here, the ALJ discredited Plaintiff's allegations for four reasons:  1) the "record does not contain objective signs and findings that in any way support her allegations;" 2) "[t]here are no diagnostic studies to show abnormalities;" 3) "the physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged;" and

4) consulting neurologist Dr. Winkler "testified telephonically at the hearing that the claimant's allegations of seizures, pain, and fibromyalgia were simply not medically supported." (R. 25, 53-56). As discussed previously, the record is void of any evidence of an underlying medical condition or an "objectively determined medical condition of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223. Therefore, the record supports the ALJ's decision to reject Plaintiff's pain testimony. Based on the record before this court, Plaintiff failed to meet the pain standard and the ALJ's decision is supported by substantial evidence.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's and Appeals Council's determinations that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ and Appeals Council applied proper legal standards in reaching its determinations. The Commissioner's final decision is, therefore, **AFFIRMED** and the motion to remand is **DENIED**. A separate order in accordance with this memorandum of decision will be entered.

Done the 15th day of May, 2013.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE